David R. Hurst
Daniel F. X. Geoghan
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: 212-332-8840
Facsimile: 212-332-8855

*Proposed Counsel to the Debtor-and-Debtor in Possession*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FLETCHER INTERNATIONAL, LTD.,<br><br>Debtor. | Chapter 11<br><br>Case No. 12-12796-REG |
| FLETCHER INTERNATIONAL, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>FLETCHER INCOME ARBITRAGE FUND IN VOLUNTARY LIQUIDATION, acting by its Joint Official Liquidators Robin Lee McMahon and Roy Bailey, FIA LEVERAGED FUND-IN OFFICIAL LIQUIDATION, acting by its Joint Official Liquidators Robin Lee McMahon and Roy Bailey, and FLETCHER FIXED INCOME ALPHA FUND, LTD-IN OFFICIAL LIQUIDATION, acting by its Joint Official Liquidators Tammy Fu and Jenna Wise,<br><br>Defendants. | Adv. Proceeding No. 12-01740 (REG) |

**DECLARATION OF DONALD S. MACKENZIE IN SUPPORT
OF DEBTOR'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, AS SUBSEQUENTLY MODIFIED TO
<u>WITHDRAW THE REQUEST FOR A *MANVILLE* INJUNCTION</u>**

I, Donald S. Mackenzie, being duly sworn, depose and state:

1. I am the Chief Restructuring Officer of Fletcher International, Ltd., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**").

2. I submit this declaration (the "**Declaration**") in support of the Debtor's Reply Memorandum of Law in Further Support of its Motion for Temporary Restraining Order and Preliminary Injunction, as Subsequently Modified to Withdraw the Request for a *Manville* Injunction, filed concurrently herewith.

3. Except as otherwise indicated, the facts set forth in this Declaration are based upon my review of relevant documents, information provided to me or verified by other officers, consultants or the Debtor's professional advisors, including Young Conaway Stargatt & Taylor, LLP and Appleby (Bermuda) Limited, and the experience and knowledge that I have gained during my work over the last twenty-five years in the restructuring industry. I am authorized to submit this Declaration on behalf of the Debtor and, if called upon to testify, I would testify competently to the facts set forth herein.

4. I was appointed by the Debtor's board of directors as the Debtor's Chief Restructuring Officer (the "**CRO**") on July 14, 2012, and the agreement between the Debtor and Conway MacKenzie Management Services, LLC ("**CMS**") regarding my engagement is memorialized in an engagement letter dated as of July 15, 2012 (the "**Engagement Letter**"). The *Debtor's Motion for Entry of an Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing and Approving (i) Debtor's Designation of Donald S. Mackenzie as Chief Restructuring Officer, and (ii) Retention and Employment of Conway Mackenzie Management Services, LLC, Effective as of July 15, 2012*, which motion seeks approval of my retention by the Court, was transmitted to the Office of the United States Trustee (the "**U.S.**

2

**Trustee**") on July 21, 2012, and will be submitted to the Court as soon as possible, after being revised in accordance with comments received from the U.S. Trustee.

5. The primary purpose of my Declaration is to provide a description of the substantial burdens that the Debtor's management is facing and will continue to face for the next ninety days and beyond during the pendency of the Debtor's chapter 11 case.

**The Burdens Being Faced by the Debtor's Management**

6. The Debtor has no employees, but rather employs two consultants who work for the Debtor on a part-time basis: Stewart Turner and Stu MacGregor. The Debtor also has two directors who also serve as officers: Floyd Saunders (Director and President) and Teddy Stewart (Director and Vice President). These directors and officers do not have day-to-day responsibilities to the Debtor.

7. Upon information and belief the Debtor has received services pursuant to an investment management agreement with Fletcher Asset Management ("**FAM**"), and an administrative services agreement with SS&C Technologies Inc. ("**SS&C**"). Post-petition the Debtor continues to receive limited services from FAM related to certain litigation matters. The Debtor has requested the SS&C begin providing certain financial reporting services again.

8. Finally, as noted above, I was appointed by the Debtor's board of directors as the Debtor's CRO on July 14, 2012. Although I will be the principal professional staffed by CMS on the engagement, I will be assisted by staff of CMS on an as-need basis (the "**Temporary Staff**"). While the Temporary Staff obviously will be of great help to me, I and the Temporary Staff nonetheless must rely on Mr. Turner and Mr. MacGregor for a great deal of necessary work product and information regarding the Debtor.

3

9. Part A through C of this Declaration details the prepetition duties of Mr. Turner and Mr. MacGregor, along with the additional duties that they have assumed as a consequence of the chapter 11 filing and Part D details the work that these individuals will be asked to begin to accomplish in the next ninety days and beyond.

A. **Mr. MacGregor's Prepetition Duties**

10. Prior to the filing of the Debtor's chapter 11 case, Mr. MacGregor spent approximately 70% of his time each week working on matters for the Debtor and its subsidiary, Aesop. In general, Mr. MacGregor acts as the Debtor's in house accountant responsible for all accounting-related matters. His specific duties include, among other things:

 a. Preparing and maintaining all financial statements, including balance sheets, income statements and profit and loss statements;

 b. Preparing and maintaining the general ledger, including all data input;

 c. Managing all cash-related matters, including reconciliation, accrued expense allocation, preparation and review of cash activity and processing reports;

 d. Managing all periodic ledger account closings;

 e. Importing trade data and information into the accounting systems and general ledger, and reconciling such data;

 f. Analyzing trading activities and intercompany activities to determine proper allocation of investments and equity, and importing such information into general ledger accounts for reconciliation;

 g. Analyzing asset valuations, including analyzing market valuation information from outside valuation firms, converting such information into numeric values, reconciling and inputting such data into valuation reports and trading systems, and subsequently transferring such data to profit and loss statements and the general ledger; and

 h. Responding to frequent information requests from the liquidators for Fletcher Income Arbitrage Fund ("**Arbitrage**"), FIA Leveraged Fund ("**Leveraged**") and Fletcher Fixed Income Alpha Fund ("**Alpha**").

4

**B.    Mr. Turner's Pre-Petition Duties**

11.    Prior to the chapter 11 filing, Mr. Turner, like Mr. MacGregor, spent approximately 70% of his time working for the Debtor as a consultant.[1] In this capacity, Mr. Turner provided a wide range of financially-related services for the Debtor including, among other things:

a.    Managing and coordinating most investment-related activities, including seeking new investment opportunities in public and private companies, conducting due diligence regarding potential investments, and preparing reports and memoranda supporting or discrediting proposed transactions;

b.    Managing and reviewing the Debtor's investment portfolio, including managing overall hedging strategies and trading activities related thereto;

c.    Coordinating with outside valuation analysts to prepare and evaluate models for valuation of warrants and other nonstandard complex investments;

d.    Assisting Mr. MacGregor, SS&C and others in connection with collection and compilation of information necessary for the preparation of financial statements and the general ledger;

e.    Reviewing financial statements, cash reconciliations and investor statements;

f.    Developing investor presentation materials and communicating with investors and their consultants regarding their investments;

g.    Serving as the primary point of contact with all administrative service organizations, including SS&C and Appleby Services (Bermuda) Ltd., the Debtor's corporate secretary;

h.    Serving as the primary point of contact with respect to the Debtor's prime broker accounts and all bank accounts;

i.    Serving as the primary point of contact with respect to the Debtor's material legal actions; and

---

[1]    Although Mr. Turner resigned as an officer and director of the Debtor on July 15, 2012, he continues to provide services to the Debtor pursuant to a prepetition consulting agreement.

5

      j.      Responding to frequent information requests from the liquidators for Arbitrage, Leveraged and Alpha.

### C.    Additional Duties Assumed Since the Bankruptcy Filing

12. Between the time of the chapter 11 filing and the date that the CRO was appointed, Mr. MacGregor and Mr. Turner acted as the sole workforce of the Debtor, working tirelessly to stabilize the Debtor while assuming a host of new duties and responsibilities. Indeed, although the chapter 11 filing has reduced the need for certain work performed by Mr. Turner and Mr. MacGregor historically, these individuals now are being asked to spend more than 90% of their time working for the Debtor to meet the multitude of demands being imposed on them.

13. In particular, since the chapter 11 filing, Mr. Turner and Mr. MacGregor have been asked to assume the following duties and responsibilities, among others:

    a.    Assisting counsel and Mr. Saunders, the Debtor's President, in gathering the information necessary for the Declaration of Floyd Saunders Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (Docket No. 2);

    b.    Assisting counsel and the CRO in identifying assets, bank accounts and custodial accounts;

    c.    Opening a new debtor-in-possession bank account and custodial accounts;

    d.    Negotiating with the Debtor's prepetition banks and prime broker account holder regarding the transfer of assets in the prepetition accounts to new debtor-in-possession accounts;

    e.    Assisting counsel in the investigation and analysis of certain of the Debtor's prepetition obligations and transactions;

    f.    Assisting counsel in identifying professionals to be retained, including the CRO and other professionals necessary to prosecute certain litigation actions that are valuable assets of Debtor's bankruptcy estate;

    g.    Preparing to respond to discovery requests in connection with the pending preliminary injunction litigation;

      h.      Participating on frequent telephone calls with the Debtor's board of directors, CRO and counsel;

      i.      Preparing for and participating in the initial Debtor interview conducted by the U.S. Trustee; and

      j.      Responding to information requests by the U.S. Trustee, the CRO and counsel.

**D.    <u>Additional Duties to be Assumed in the Next Ninety Days</u>**

14.    In addition to their pre-petition duties and their new chapter 11 duties assumed since the filing—many of which will be ongoing—I will require the focused attention of Mr. Turner and Mr. MacGregor over the next ninety days (and beyond) to assist me and the CMS team to stabilize the Debtor and its business, to understand and analyze the Debtor and its assets and liabilities, to ensure that the Debtor is complying with the various requirements of the chapter 11 process, and to begin to formulate a reorganization strategy.

15.    More particularly, in the next ninety days, I will need Mr. Turner and Mr. MacGregor to assist me with the following tasks, among others:

      a.      Conducting general due diligence regarding the Debtor's operations and investments;

      b.      Analyzing various of the Debtor's historical transactions;

      c.      Analyzing the Debtor's assets, including, without limitation, the value, marketability and other features of the Debtor's securities holdings and claims that are being or may be asserted through litigation;

      d.      Analyzing the Debtor's liabilities, including claims, if any, that may be asserted by creditors and shareholders against the Debtor;

      e.      Understanding any deadlines applicable to the Debtor's complex investments to avoid the unintended expiration of exercise rights;

      f.      Developing a debtor-in-possession thirteen-week rolling budget;

      g.      Understanding the operation of the cash management system to the extent that it exists, and implementing one to the extent that no such system exists;

      h.      Completing the Debtor's schedules of assets and liabilities and the statement of financial affairs;

      i.      Preparing monthly operating reports;

      j.      Developing a case strategy, and evaluating alternative plans and modes of implementation; and

      k.      Responding to various information requests, demands and administrative items.

16.      In short, there is a tremendous amount or work to be done and few people to accomplish such work. I believe that both Mr. Turner and Mr. MacGregor will be fully occupied with the above-described responsibilities and duties for the first ninety days of this case, and probably for a significantly more lengthy time. As such, I believe that if the Debtor is forced to defend a winding up petition in Bermuda, which necessarily will require a significant time commitment from both Mr. Turner and Mr. MacGregor, the ability of Mr. Turner and Mr. MacGregor to focus their attention on restructuring-related tasks will be impaired—and consequently the Debtor's chapter 11 restructuring will be harmed, perhaps irreparably.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       July 24, 2012

      By:    /s/ Donald S. Mackenzie
            Donald S. Mackenzie
            Chief Restructuring Officer