```
 1
 2  UNITED STATES BANKRUPTCY COURT
 3  SOUTHERN DISTRICT OF NEW YORK
 4  Lead Case No. 12-12796-reg   Adv. Proc. No. 12-01740-reg
 5  - - - - - - - - - - - - - - - - - - - - -x
 6  In the Matters of:
 7  FLETCHER INTERNATIONAL, LTD.,
 8           Debtor.
 9  - - - - - - - - - - - - - - - - - - - - -x
10  FLETCHER INTERNATIONAL, LTD.,
11                    Plaintiff,
12            - against -
13  FLETCHER INCOME ARBITRAGE FUND IN
14  VOLUNTARY LIQUIDATION,
15                    Defendant.
16  - - - - - - - - - - - - - - - - - - - - -x
17           United States Bankruptcy Court
18           One Bowling Green
19           New York, New York
20
21           October 15, 2012
22           9:30 AM
23  B E F O R E:
24  HON. ROBERT E. GERBER
25  U.S. BANKRUPTCY JUDGE
```

12-01740-reg Fletcher International, Ltd. v. Fletcher Income
Arbitrage Fund in Voluntary Liquidation

Ch 11  12-12796 Fletcher International, Ltd.

Matter:  Pre-trial Conference.

Transcribed by:  Penina Wolicki
eScribers, LLC
700 West 192nd Street, Suite #607
New York, NY 10040
(973)406-2250
operations@escribers.net

```
 1
 2   A P P E A R A N C E S :
 3   RICHARD J. DAVIS, ATTORNEY AT LAW
 4        Chapter 11 Trustee
 5        415 Madison Avenue
 6        11th Floor
 7        New York, NY 10017
 8
 9   BY:  RICHARD J. DAVIS, ESQ.
10
11
12   LUSKIN, STERN & EISLER LLP
13        Attorneys for Chapter 11 Trustee
14        Eleven Times Square
15        New York, NY 10036
16
17   BY:  MICHAEL LUSKIN, ESQ.
18
19
20   HOLLAND & KNIGHT LLP
21        Attorneys for Fletcher Fixed Income Alpha Fund Ltd.
22        31 West 52nd Street
23        New York, NY 10019
24
25   BY:  BARBRA R. PARLIN, ESQ.
```

1
2  UNITED STATES DEPARTMENT OF JUSTICE
3       Office of the United States Trustee
4       33 Whitehall Street
5       21st Floor
6       New York, NY 10004
7
8  BY:    RICHARD C. MORRISSEY, ESQ.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                    P R O C E E D I N G S

2            THE COURT:  Good morning.  Have seats, please.

3            Mr. Luskin, good morning.

4            MR. LUSKIN:  Good morning, Your Honor.  I'm Michael

5   Luskin; Luskin, Stern & Eisler, for the Chapter 11 trustee in

6   the Fletcher matter.  We're here, Your Honor, on a status

7   conference on an adversary proceeding, your 01740 proceeding,

8   the so-called control litigation.

9            But I thought we would use this status conference as

10  an opportunity to both introduce the trustee, give you a very

11  brief overview of what the trustee's done in the last two weeks

12  since his appointment, and to give the Court an idea as to what

13  to expect in the next couple of weeks, and in particular, at

14  the November 9th hearing which was previously scheduled and on

15  which there are a number of pending motions.

16           But with the Court's permission, I think the best way

17  to proceed would be for you to hear from the trustee, if I

18  could --

19           THE COURT:  Sure.

20           MR. LUSKIN:  -- cede the floor to --

21           THE COURT:  This is the first time that either of you

22  has appeared before me on this case.

23           MR. LUSKIN:  Excuse me?

24           THE COURT:  This is the first time that either of you

25  have appeared before me on this case.

1            MR. LUSKIN:  Yes, Your Honor.  Just for -- the
2    chronology is that following the two motions to appoint a
3    trustee, the U.S. Trustee nominated Mr. Davis September 25th,
4    and Your Honor signed the approval order on September 28th.  So
5    our appearance is of very, very recent vintage.  And frankly,
6    that is why we didn't want to wait until November 9th to first
7    appear and make the introductions and give you a sense of where
8    we're going with this.
9            THE COURT:  Good enough.
10           MR. LUSKIN:  Okay, so --
11           THE COURT:  Mr. Davis, come on up, please.
12           MR. DAVIS:  Thank you very much, Your Honor.  Since my
13   appointment, I've been meeting with all the parties.  And the
14   first thing I should report, because it's most germane to the
15   actual purpose of this morning, is that we believe no further
16   action will be required by the Court in the so-called control
17   proceedings.  We've met with the liquidating trustees; we've
18   met with all the other interested parties.  And I think we are
19   working that out without further intervention by the Court
20   being required.
21           We're also, obviously, during this two-week period,
22   working on the transition from the debtor-in-possession to the
23   trustee, and are receiving good cooperation from the debtor's
24   counsel and the -- Conway MacKenzie, which was the proposed
25   CRO.  So I think on that issue, things are going smoothly.

1          Obviously we are -- we have two core functions, as I
2   see it.  One is obviously to review and manage the assets to
3   see what is possible in terms of securing value from those
4   assets.  And the second thing is to conduct an appropriate
5   investigation.  In order to assist in both of those, we will --
6   I will be proposing to retain Goldin Associates to assist both
7   on the management of the assets side, as well as on the
8   forensic investigation side.
9          We have, in the last two weeks, I think, already
10  started work to create the foundation to be able to proceed
11  with that.  With the goal being, obviously, I think we have to
12  recognize that my obligation is to do a thorough investigation
13  while recognizing that this estate is not an estate that has an
14  extraordinary amount of cash.  So we are striving to do this in
15  as an effective, cost-effective way as possible.
16         We are receiving, at this point, I think, good
17  cooperation from all the parties.  But at the same time, one of
18  the things we will be filing shortly is a 2004 application,
19  because we think having that authority in place will, again,
20  enable the investigative part of my responsibilities to proceed
21  in the most efficient and cost-efficient way, although, again,
22  we are receiving good cooperation and hope that a lot of
23  information we need will be supplied voluntarily.
24         THE COURT:  Okay.  You or Mr. Luskin know that under
25  my case management orders, 2004 applications are taken on

1  presentment, not ex parte.
2          MR. DAVIS:  That's correct.
3          THE COURT:  Okay.
4          MR. DAVIS:  I mean, we're cognizant of that, and I
5  think that will be one of the things that we may be adding to
6  the calendar for November 9th, if we can do it at that time.
7          THE COURT:  What you and he might want to consider is
8  putting it on presentment for a date that works for you and is
9  fair to anybody who might have a different view, and include it
10 on a calendar, in case anybody wants to be heard on it, so you
11 can keep it moving forward.
12         MR. DAVIS:  We will do that, Your Honor.  Thank you
13 very much.
14         So the plan -- again, the last two weeks have been
15 spent, as I've described.  And the goal is to proceed in as
16 expeditious a fashion, so that the investigative phase does not
17 linger but is done, as I say, by focusing now and trying to get
18 it done without making this a -- as I said to some of the
19 people, I don't intend to make this a career in terms of doing
20 this investigation; to try and do it in an expeditious but
21 thorough manner.
22         THE COURT:  Okay.  To either you or to Mr. Luskin and
23 Mr. Davis.  Matters get put on my calendar without me being
24 aware of what they are until a week or so before they're
25 scheduled.  What do we have on that day -- did you say November

1   9 -- you or Mr. Luskin say November 9?
2          MR. DAVIS:  I think Mr. Luskin was going to go through
3   the various things that are on the calendar.  And obviously, as
4   to some of them, I'll be having to make some judgments as to
5   whether I think they should proceed in the manner in which the
6   original motion is contemplated.
7          THE COURT:  All right.
8          MR. DAVIS:  Let me hand that to Mr. Luskin if that's
9   all right with Your Honor.
10         THE COURT:  Anything else from you before you hand off
11  back to Mr. Luskin?
12         MR. DAVIS:  Only if Your Honor has any questions.
13         THE COURT:  No, I'm covered for now.  Thanks.
14         MR. DAVIS:  Thank you, Your Honor.
15         THE COURT:  Mr. Luskin?
16         MR. LUSKIN:  Thank you, Your Honor.  On the 9th, first
17  off, I respectfully would suggest that you not look at anything
18  until at least a week before.  My plan is to give you, a week
19  before, an agenda or a status memo on where things stand.
20         THE COURT:  Okay.
21         MR. LUSKIN:  If we can -- if that will work.
22         THE COURT:  That's hardly a hardship from my
23  perspective.
24         MR. LUSKIN:  Okay.
25         THE COURT:  I have other things to keep myself

1  occupied.
2       MR. LUSKIN:  I'm sure you do.  There are retention
3  applications relating to debtor's professionals which are on
4  for the 9th; I believe for the debtor's Bermuda counsel, for
5  the debtor's financial consultant, the CRO, and there may be
6  one other.  We will be speaking with debtor's counsel and
7  counsel for the CRO about how those should be handled.
8  Obviously --
9       THE COURT:  Let me interrupt you, please.
10      MR. LUSKIN:  Yes.
11      THE COURT:  Are we talking about getting the
12 retentions in place so they have a handle for getting paid for
13 the period before you and Mr. Davis stepped in, or are you
14 talking about a continuing role for debtor professionals?
15      MR. LUSKIN:  The former.  Retention both because they
16 will, of course, want to be paid for their pre-trustee work.
17 Also, in fairness, Your Honor, we have received excellent
18 cooperation from both Young Conaway and Conway MacKenzie on
19 just the transition, on getting their work product, getting the
20 benefit of, in particular, financial information.  And that
21 will have to be dealt with.
22      And our proposal -- our hope is that we will negotiate
23 something that's acceptable to all parties, including the U.S.
24 Trustee's Office, and present it to Your Honor as a proposed
25 way to deal with their work -- their retention and their work

1    in the pre-trustee period and the debtor-to-trustee transition
2    period.  And that would then be the end of it for the debtor's
3    professionals.
4             We also will put on the calendar, we're filing today,
5    the trustee's application to retain my firm.  And we will also,
6    I hope, file within the next day or two, the retention papers
7    for Goldin Associates.  We have to get those to the U.S.
8    Trustee for his review first, and we'll do that later today.
9    So we should be able to file both of those this week, so
10   they're on for the 9th.  And I'm hopeful there won't be any
11   issues with respect to either of those retention applications.
12            There is also on for the 9th a cash collateral motion
13   to approve a stipulation that was previously negotiated between
14   the debtor parties -- or the debtor and the related -- parties
15   related to the debtor on the one hand, and Credit Suisse on the
16   other.  One of the things that the trustee is going to be doing
17   in the next -- really this week, is to open up contact with
18   Credit Suisse and their counsel, I believe that's Milbank, and
19   see what issues there might be on the cash collateral order
20   that's been presented.
21            That's one where I cannot today tell you what the
22   outcome is going to be, but I can tell you that it's certainly
23   our hope and desire that we will be presenting a stipulation on
24   the use of cash collateral.
25            Credit Suisse is asserting a lien over both -- really

1  over all the liquid assets that the estate has, not only cash,
2  but there are some securities that appear to be readily
3  marketable. So needless to say, we're taking a close look at
4  that. And when those are freed up, we -- one of the things
5  that the trustee is considering is whether or not both as a
6  business matter and as a practical matter, some or all of the
7  liquid securities need to be sold so that there's cash in the
8  estate.
9          The business point would be to avoid concentration of
10 the portfolio, to have all your liquid assets in one holding.
11 And as a practical matter, the investigation and asset
12 management is going to require cash going forward, and we're
13 going to need to get our hands around that.
14         THE COURT: To what extent do you guys have liquidity
15 apart from those securities?
16         MR. LUSKIN: I would say very, very little. Cash and
17 securities. Credit Suisse is holding onto cash. And then
18 there's also probably about ten different assets -- main assets
19 in the debtor's name, and one, maybe two of those is liquid.
20         THE COURT: Um-hum.
21         MR. LUSKIN: So we're going to be looking into that
22 fairly intensively over the next week or two. And with respect
23 to the November 9th motion, what that means is there'll be both
24 cash collateral, and there may be a 363 or similar kind of
25 motion to deal with a particular asset. I just can't tell you

1  now.
2          THE COURT:  You're talking about an asset, particular
3  at 363, like for leave to sell a certain issuance of securities
4  or something like that, as compared and contrasted to a
5  GM-style 363?
6          MR. LUSKIN:  Absolutely, Your Honor.  I'm talking
7  about a traditional --
8          THE COURT:  The way it used to be.
9          MR. LUSKIN:  -- old-style 363 sale; a particular
10 asset, business judgment, no creeping plan issues, nothing like
11 that.
12         THE COURT:  I'm with you.
13         MR. LUSKIN:  Okay.  That's -- so those -- cash
14 collateral is on the calendar.  363 may be on the calendar.
15 And then Your Honor -- Mr. Davis and Your Honor had a colloquy
16 about 2004.  Our plan was frankly to file it and notice it up
17 for the same hearing, unless we decide there's some urgency
18 that requires short notice.  The thought was to draft a 2004
19 order and proposed confidentiality order; vet it with the
20 parties; file it on notice; give people time to put in written
21 objections if they so desire; and then finalize it, hopefully,
22 at the hearing on the 9th.  And again, we hope that would be on
23 consent.
24         Again, we've received cooperation from all the parties
25 we've spoken with.  But there are non-parties and traditional

1  third parties that are going to require subpoenas before they
2  produce bank records or other kinds of information.
3           So that is the plan.  Hearing on the 9th to deal with
4  that catalog of motions --
5           THE COURT:  Excuse me a second, Mr. Luskin.
6           Liz, you're closer to the door.  Can you find out
7  what's going on -- all that noise is?  I don't know if you'll
8  be able to find out easily, but it's driving me nuts.
9           Continue if you would, please, Mr. Luskin.
10          MR. LUSKIN:  Okay.  So hearing on the 9th with the
11 catalog of motions.  And I think well in advance of that, we
12 would give you either an agenda or some kind of written status
13 report, maybe in the form of a letter -- we don't have to
14 clutter the record with it -- to let you know where we -- what
15 to expect:  which are disputed, which will be contested, which
16 won't be contested.
17          THE COURT:  Um-hum.
18          MR. LUSKIN:  And I believe that's all I have, unless
19 the Court has any further questions.
20          THE COURT:  No, that's fine for now, Mr. Luskin.  I'm
21 going to regard this as a case conference.  And if any of the
22 other stakeholders' counsel want to be heard, I'm going to give
23 them that chance.
24          Mr. Morrissey, are you taking over for Ms. Gasparini?
25          MR. MORRISSEY:  Yes, Your Honor.  Just for the record,

1   Richard Morrissey for the U.S. Trustee.  Yes, Ms. Gasparini has
2   left our office.  And I just wanted to apprise the Court of one
3   development in the case, which is, the 341 meeting, which
4   originally was held on August 16th was continued to Friday,
5   October 12th and held and closed.  And at that meeting, Mr.
6   Davis introduced himself to the parties that appeared for that.
7           Your Honor, obviously the case is in a new posture.
8   Mr. Luskin mentioned retentions in this case.  And one
9   retention that the Court is not going to have to deal with, it
10  seems, in the foreseeable future, is conflict --
11          THE COURT:  Forgive me, Mr. Morrissey.  You're
12  competing with the drilling and the hammering.  Would you pull
13  the microphone closer to you, please.
14          MR. MORRISSEY:  Yes, certainly, Your Honor.  There's
15  not going to be the need of conflicts counsel here for the
16  trustee.  I think that will save the estate some money, because
17  as Mr. Davis has said, the amount of money on hand here is not
18  infinite.
19          And Your Honor, obviously, we'll be looking forward to
20  working with the trustee with regard to the retentions that
21  both Mr. Davis and Mr. Luskin have mentioned, and hopefully
22  we'll all be on the same page when November 9th rolls around.
23  Thank you.
24          THE COURT:  Okay.  Very good.  Anybody else?
25          Okay.  Then, thanks very much, Mr. Luskin, Mr. Davis.

1  Good luck in this case.
2          MR. DAVIS:  Thank you very much, Your Honor.
3          MR. LUSKIN:  Thank you, Your Honor.
4          THE COURT:  Thank you.
5       (Whereupon these proceedings were concluded at 9:46 AM)

**C E R T I F I C A T I O N**

I, Penina Wolicki, certify that the foregoing transcript is a true and accurate record of the proceedings.

*[signature: Penina Wolicki]*

_____

**PENINA WOLICKI**

**AAERT Certified Electronic Transcriber CET**D-569**

**eScribers**

**700 West 192nd Street, Suite #607**

**New York, NY 10040**

**Date:  October 16, 2012**